**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

AL'TONYA ANDERSON,

        Plaintiff,

vs.                                               Case No. 3:15-cv-338-J-34JRK

BLUESHORE RECOVERY SYSTEMS,
LLC,

        Defendant.
_____/

## AMENDED[1] REPORT AND RECOMMENDATION[2]

### I. Status

This cause is before the Court on Plaintiff's Motion for Default Judgment Against Defendant Blueshore Recovery Systems, LLC (Doc. No. 8; "Motion"), filed November 3, 2015. Attached to the Motion is a Declaration of one of Plaintiff's attorneys, Alex D. Weisberg. See Declaration of Alex D. Weisberg in Support of Plaintiff's Motion for Default Judgment Against Defendant Blueshore Recovery Systems, LLC (Doc. No. 8-1; "Weisberg

---

[1] This Amended Report and Recommendation is entered to correct an error as to the attorneys' fees award calculation contained in the Report and Recommendation (Doc. No. 12), entered February 10, 2016. See infra Part IV.D. Other than adjustments made to correct that error and the amount awarded based on that correction, this Amended Report and Recommendation is substantively unchanged from the February 10, 2016 Report and Recommendation.

[2] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Declaration").[3]   In the Motion, Plaintiff seeks entry of default judgment against Defendant because Defendant has failed to timely respond to the Complaint and Demand for Jury Trial (Doc. No. 1; "Complaint") or otherwise appear in this case. See Motion at 1. The Motion was referred to the undersigned upon filing.

On November 4, 2015, the Court entered an Order (Doc. No. 9) taking the Motion under advisement and directing Defendant to file with the Court and serve on Plaintiff a response to the Motion no later than November 23, 2015. The undersigned then entered an Order (Doc. No. 10) on January 29, 2016, directing Plaintiff to file a supplement with more detailed support for the requests for attorneys' fees and court costs. On February 8, 2016, Plaintiff filed Supplemental Declaration of Alex D. Weisberg in Support of Plaintiff's Motion for Default Judgment (Doc. No. 11; "Supplemental Declaration" or "Suppl. Decl."), attached to which is a law firm document listing the time spent on each task in this case, the date of the task, and the attorney or paralegal who completed the task (Doc. No. 11-1; "Time Sheet").[4]

Defendant has filed nothing to date. Accordingly, the Motion is deemed unopposed. For the reasons discussed below, the undersigned recommends that the Motion be granted in part and denied in part.

## II. Background

Plaintiff initiated this action by filing a Complaint on March 19, 2015, claiming

---

[3]   Also attached to the Motion are the following documents: [Proposed] Order Granting Motion for Default Judgment (Doc. No. 8-2) and Certificate of Service (Doc. No. 8-3).

[4]   Also attached to the Supplemental Declaration are a sixty-two page report of a national survey of attorneys' fees (Doc. No. 11-2) and a Report and Recommendation issued by the United States District Court for the Southern District of Florida in an unrelated case (Doc. No. 11-3).

violations of the Fair Debt Collections Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA"). The Complaint includes the following allegations. Plaintiff allegedly owes to "a creditor other than Defendant" a debt that "arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes." Compl. at 2 ¶¶ 8-9. Defendant is a debt collector who communicates through instrumentalities of interstate commerce for that purpose. See id. at 2-3 ¶¶ 10, 15. On November 10, 2014, November 19, 2014, and December 9, 2014, "[i]n connection with the collection of the [d]ebt," Defendant called Plaintiff's cellular phone and each time left "a voicemail message with an artificial or prerecorded voice." Id. at 2 ¶¶ 11-12. The November 10 message did not disclose that Defendant "was attempting to collect a debt and that any information obtained would be used for that purpose," and the messages on November 19 and December 9 did not "disclose that the communications were from a debt collector." Id. at 3 ¶¶ 15, 17.

The Complaint contains four counts. The first three counts are FDCPA claims, and the fourth is a TCPA claim. Count I states that "Defendant violated 15 U.S.C. § 1692(d) by placing telephone calls without meaningfully disclosing the caller's identity." Id. at 4 ¶ 27. Count II states that "Defendant violated 15 U.S.C. § 1692e(11) by failing to disclose in its initial communication with Plaintiff that the communication was an attempt to collect a debt and any information obtained would be used for that purpose." Id. at 5 ¶ 29. Count III states that "Defendant violated 15 U.S.C. § 1692g(a) by failing to provide Plaintiff with the notices required by 15 U.S.C. § 1692g et seq., either in the initial communication with Plaintiff, or in writing within 5 days thereof." Id. at 5 ¶ 31. Count IV states that "Defendant violated 47

U.S.C. § 227(b)(1)(A)(iii) by willfully and knowingly placing telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system and/or an artificial or pre-recorded voice." Id. at 6 ¶ 33.  As relief for her claims, Plaintiff seeks statutory damages, as well as attorneys' fees and costs. Id. at 4-6; Motion at 2.

Plaintiff filed a Return of Service (Doc. No. 5) on June 1, 2015, reflecting that Defendant was served with process.  Due to Defendant's failure to timely respond to the Complaint or otherwise appear, Plaintiff moved for entry of default on August 4, 2015, see Plaintiff's Motion for Entry of Clerk's Default Against Defendant Blueshore Recovery Systems, LLC (Doc. No. 6), and the Clerk of Court entered a default against Defendant on August 5, 2015, see Entry of Default (Doc. No. 7).  As noted, Defendant has not appeared in this matter.

### III.  Applicable Law

Rule 55, Federal Rules of Civil Procedure ("Rule(s)"), provides the requirements for entry of a default judgment. See Fed. R. Civ. P. 55(b)(2).  A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances, the case never has been placed at issue." Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., 803 F.2d 1130, 1134 (11th Cir. 1986).  All well-pleaded allegations of fact are deemed admitted upon entry of default; however, before entering a default judgment, a court must confirm that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted. See Nishimatsu Const. Co. v. Houston Nat.

Bank, 515 F.2d 1200, 1206 (5th Cir. 1975);[5] see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (stating that "[a] default judgment cannot stand on a complaint that fails to state a claim") (citations omitted).

## IV. Discussion

### A. Jurisdiction

This case is properly within the subject matter jurisdiction of this Court. See 28 U.S.C. § 1331 (federal question); 15 U.S.C. § 1692k(d) (indicating that "an action to enforce any liability created by [the FDCPA] may be brought in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurs"); Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 753 (2012) (holding that federal courts have concurrent federal-question jurisdiction over private TCPA suits). The Court must now ensure that Plaintiff has properly stated valid causes of action.

### B. Causes of Action

#### 1. FDCPA Claims (Counts I, II, and III)

One of "the purpose[s] of [the FDCPA is] to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. "[T]o prevail on an FDCPA claim, a plaintiff must prove that: 1) the plaintiff has been the object of collection activity arising from consumer debt, 2) the defendant is a debt collector as defined by the FDCPA, and 3) the defendant has engaged in an act or omission prohibited by the FDCPA." Salazar v. MFP, Inc., 847 F. Supp.

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all the decisions of the former United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981.

2d 1329, 1331 (M.D. Fla. 2012) (internal quotation and citation omitted); see also Erickson v. Gen. Elec. Co., 854 F. Supp. 2d 1178, 1182 (M.D. Fla. 2012).  The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 1692a(5).  A consumer is defined as "any natural person obligated or allegedly obligated to pay any debt." § 1692a(3). A plaintiff need only show "a single violation of the statute . . . to establish civil liability." Graveling v. BankUnited, N.A., 970 F. Supp. 2d 1243, 1255 (N.D. Ala. 2013) (citation omitted).

Plaintiff's well-pleaded allegations in the Complaint establish that Plaintiff is a consumer who allegedly owes a debt, that Defendant is a debt collector, and that Defendant has contacted Plaintiff in attempts to collect the debt.  See Compl. at 2 ¶¶ 8-11.  As to whether Defendant acted in a manner prohibited by the FDCPA, Plaintiff asserts three separate claims, each addressed in turn below.

Count I claims that "Defendant violated 15 U.S.C. § 1692d(6) by placing telephone calls without meaningfully disclosing the caller's identity," id. at 4 ¶ 27, which is expressly listed in the cited statute subsection as a type of prohibited conduct.[6]  "Courts have defined "'meaningful disclosure' [in § 1692d(6)] to include disclosure of the caller's name, the debt collection company's name, and the nature of the debt collector's business." Dokumaci v. MAF Collection Servs., No. 8:09-cv-2488-T-24 TG, 2011 WL 833988, at *3 (M.D. Fla. Mar.

---

[6] Section 1692d forbids a debt collector to "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.  Such harassing conduct includes "the placement of telephone calls without meaningful disclosure of the caller's identity." § 1692d(6).


4, 2011) (unpublished) (quoting Sclafani v. BC Servs., Inc., 2010 WL 4116471, at *2 (S.D. Fla. Oct.18, 2010)). Allegations in the Complaint state that in its phone communications with Plaintiff, Defendant did not "disclose [its] corporate identity," id. at 2 ¶ 13, or "disclose that the communications were from a debt collector," id. at 3 ¶ 17. These allegations establish that Defendant violated § 1692d(6).

Count II claims that "Defendant violated 15 U.S.C. § 1692e(11) by failing to disclose in its initial communication with Plaintiff that the communication was an attempt to collect a debt and any information obtained would be used for that purpose," Compl. at 5 ¶ 29, which is expressly listed in the cited statute subsection as a type of prohibited conduct.[7] Elsewhere in the Complaint, Plaintiff alleges that Defendant failed to disclose this information in the voicemail message to Plaintiff on November 10, 2014. See id. at 3 ¶ 15. The Complaint, therefore, sufficiently establishes a violation of § 1692e(11).

Count III states that "Defendant violated 15 U.S.C. § 1692g(a) by failing to provide Plaintiff with the notices required by 15 U.S.C. § 1692g et seq., either in the initial communication with Plaintiff, or in writing within 5 days thereof." Id. at 5 ¶ 31. In the event that a debt collector fails to provide the information in the initial communication, this statute requires that the debt collector provide to the consumer in a written notice certain information to the consumer "[w]ithin five days after the initial communication." § 1692g(a). This information includes the debt amount, the creditor's name, and statements indicating, for

---

[7] Section 1692e forbids a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, specifically including "[t]he failure to disclose in the . . . initial oral communication[] that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," § 1692e(11).

example, that the debt collector will assume the debt is valid unless the consumer disputes it within thirty days. Id. By alleging in the Complaint that Defendant failed to provide this information in its initial phone call and in any notice within five days after the calls, see Compl. at 2-3 ¶¶ 13, 15-17, Plaintiff has sufficiently established that Defendant violated § 1692g(a).

### 2. TCPA Claim (Count IV)

The TCPA prohibits unsolicited phone calls that utilize prerecorded messages. 47 U.S.C. § 227(b)(1)(A)(iii). In enacting the TCPA, Congress sought to protect consumers from "unrestricted telemarketing," which it determined "[could] be an intrusive invasion of privacy." Mims, 132 S. Ct. at 745 (internal quotation and citation omitted). A TCPA claim for calls made to a cellular phone requires a plaintiff to show that "(1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." Augustin v. Santander Consumer USA, Inc., 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012) (citing § 227(b)(1)(A)) (other citation omitted). "A plaintiff need not prove the purpose of the call or the absence of express consent to make out a prima facie case under the TCPA." Gambon v. R & F Enters., Inc., No. 6:14-cv-403-Orl-18GJK, 2015 WL 64561, at *4 (M.D. Fla. Jan. 5, 2015) (unpublished).

Here, Count IV states that "Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by willfully and knowingly placing telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system and/or an artificial or pre-recorded voice." Id. at 6 ¶ 33. Supporting allegations in the Complaint state (1) that Defendant called Plaintiff's cell phone

on November 10, 2014, November 19, 2014, and December 9, 2014, id. at 2 ¶ 11; (2) that Defendant did so by using "an artificial or prerecorded voice," id. at 2 ¶ 12;[8] and (3) that Defendant did so without Plaintiff's prior consent, id. at 3 ¶ 20.  Accepting the well-pled factual allegations as true, the undersigned finds that Plaintiff has stated a valid claim that Defendant violated the TCPA on three occasions.

## C. Damages

As Plaintiff states valid causes of action and, therefore, is entitled to entry of a default judgment, the undersigned must now determine whether a hearing is necessary to decide the amount of damages.  "[A] judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculation." United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979); see also SEC v. Smyth, 420 F.3d 1225, 1231 (11th Cir. 2005).  When the essential evidence regarding damages is before the court, a hearing on damages may be unnecessary. See Smyth, 420 F.3d at 1232 n.13.

Here, the undersigned finds that a hearing is unnecessary because the essential evidence relating to damages is before the Court. See id.  Plaintiff seeks a total of $9,170 in damages.  Motion at 2.  Aside from attorneys' fees and costs, addressed later, these damages include the following: (1) FDCPA statutory damages of $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(A); and (2) TCPA statutory damages of $4,500, pursuant to 47 U.S.C.

---

[8] Plaintiff also alleges, "[u]pon information and belief," that Defendant used an automatic dialing system to make these calls.  Compl. at 3 ¶¶ 18, 23, 24.  Because a violation is established if Defendant used either "an automatic telephone dialing system or an artificial or prerecorded voice," 47 U.S.C. § 227(b)(1)(A) (emphasis added), the undersigned need not address whether Plaintiff's allegations regarding the dialing system suffice.

§ 227(b)(3)(B). Id. These amounts are each addressed separately below.

### 1. FDCPA Damages of $1,000

The FDCPA entitles a plaintiff to "such . . . damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). In calculating such damages, a court is to consider such factors as "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." § 1692k(b)(1). Upon review of these considerations, the undersigned finds that the requested statutory amount of $1,000 should be awarded.

### 2. TPCA Damages of $4,500

Second, in the context of the TPCA, "[s]uccessful Plaintiffs are entitled to . . . actual damages caused by the violation or $500 for each violation, whichever is greater." Gambon, 2015 WL 64561 at *5 (citing 47 U.S.C. §§ 227(b)(3)(A), (B)). "If the court finds that the defendant willfully or knowingly violated [the TPCA], the court may, in its discretion, [award treble damages]." Id. (citing § 227(b)(3)). "The requirement of "willful[ ] or knowing[ ]" conduct requires the violator to know he was performing the conduct that violates the statute." Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir. 2015) (citation omitted).

Here, because Plaintiff has established a claim that Defendant committed three violations of the TPCA, she is entitled to at least $1,500. As to whether Defendant acted willfully or knowingly, such that treble damages are warranted, Plaintiff alleges, "[u]pon information and belief," that "Defendant placed the telephone calls to Plaintiff . . . voluntarily" and "under its own free will." Compl. at 3 ¶¶ 21-22. Plaintiff further alleges, "[u]pon

information and belief," that "Defendant had knowledge that it was using an automatic telephone dialing system to make and/or place each of the telephone calls," id. at 3 ¶ 23, and that "Defendant intended to use" such a system to do so, id. at 3 ¶ 24.

Because these allegations are conclusory, lacking any apparent factual basis, the Court need not accept them as true. See Lary, 780 F.3d at 1107 (citation omitted) (stating that "the bare assertion in [the plaintiff]'s complaint that the defendants 'willfully' and 'knowingly' violated the [TPCA] was a legal conclusion, not an allegation of fact that we must accept as true"). Furthermore, Plaintiff does not allege that Defendant knew that it lacked Plaintiff's consent to make the calls, as required for the violation to be knowing or willful. See McBeth v. Credit Prot. Ass'n, L.P., No. 8:14-cv-606-T-36AEP, 2015 WL 4429324, at *3 (M.D. Fla. July 20, 2015) (unpublished) (citation omitted). Because the allegations in the Complaint do not sufficiently establish that Defendant's violations were knowing or willful, Plaintiff is entitled under the TPCA only to $1,500 (for three violations at $500 each), not treble damages.

**D. Attorneys' Fees**

Plaintiff seeks $3,250 in attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)(3). Motion at 2. The FDCPA entitles a prevailing plaintiff to "a reasonable attorney's fee as determined by the court." § 1692k(a)(3). To calculate an award of reasonable attorneys' fees, this Court generally follows the "lodestar approach." Newman v. Ormond, 396 F. App'x 636, 640 (11th Cir. 2010) (unpublished) (citing Fla. Patient Comp. Fund v. Rowe, 472 So.2d 1145, 1150 (Fla. 1985)); see also Durden v. Citicorp Trust Bank, FSB, 763 F. Supp. 2d 1299, 1308 (M.D. Fla. 2011).

The lodestar approach consists of two parts. First, the "lodestar" is calculated; that "is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area." Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000) (citations omitted). A reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citations omitted). The burden is upon the fee applicant to "supply[] the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." Id. at 1303. Second, the "lodestar" may be adjusted "to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." Dillard, 213 F.3d at 1353 (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

Here, according to Mr. Weisberg, the total requested attorneys' fees amount of $3,250, is calculated based on the work of performed in this case by four people: (1) attorney Mr. Weisberg, billing for 5.8 hours at $335 per hour ($1,943 total); (2) attorney Joseph Pavani, billing for 2.8 hours at $250 ($700 total); (3) attorney Michael Rolland, billing for 1.6 hours at $175 per hour ($280 total); and (4) paralegal Tremain Davis, billing for 7.6 hours at $135 per hour ($1,026 total). Suppl. Decl. at 3-4; see generally Time Sheet. Mr. Weisberg states that although these amounts add up to $3,949, Plaintiff is "[e]xercising bill discretion" by "seek[ing] only $3,250 in fees in this matter." Suppl. Decl. at 4.

Mr. Weisberg asserts that "the time incurred by each individual . . . was reasonable and necessary," id. at 2, and that the hourly rates being charged are also reasonable in light

of the experience of the respective attorney or paralegal, id. at 2-4. Specifically, Mr. Weisberg states that he is "the founding and managing partner of the Weisberg Consumer Law Group" and has been practicing consumer law for over fifteen years, including FDCPA cases, id. at 1; that Mr. Pavani is a senior associate attorney at Thompson Consumer Law Group, PLLC, ("Thompson Law") and has been "exclusively representing consumers in federal and state litigation, including claims under the [FDCPA]," since 2010, id. at 3; that Mr. Rolland is an associate attorney at Thompson Law, where he has been "representing consumers in FDCPA and other consumer related matters in state and federal court" since 2015, id.; and that Mr. Davis "is a paralegal with over 10 years of experience," id. at 4.

Upon review of the case law from this District, the undersigned finds that the attorneys' requested hourly rates are reasonable in light of their respective experience and skill. See Kearney v. Auto-Owners Ins. Co., No. 8:06-cv-595-T-24TGW, 2011 WL 1527262, at *3 (M.D. Fla. Apr. 21, 2011) (unpublished) (concluding that reasonable hourly rates for attorneys, depending on the experience of each, ranged from $125 to $300 per hour); Renninger v. Phillips & Cohen Assocs., No. 8:10-cv-5-T-33EAJ, 2010 WL 3259417, at *2 (M.D. Fla. Aug. 18, 2010) (unpublished) (finding reasonable hourly rates of $270 per hour for attorneys with five and six years of experience and $338 per hour for an attorney with sixteen years of experience); Myrick v. Distribution & Acquisition Network, No. 8:09-cv-1391-T-33TBM, 2010 WL 2179112, at *5 (M.D. Fla. Apr. 28, 2010) (unpublished) (finding $200 to $300 per hour to be a reasonable rate for an attorney to charge in a routine FDCPA case).

The undersigned finds, however, that the rate and hours requested for Mr. Davis's work are unreasonable and excessive. First, as to the hourly rate, even considering his ten

years of experience, the undersigned finds that $95 per hour, rather than the requested $125, is a reasonable rate for a paralegal's services. See Rynd v. Nat'l Mut. Fire Ins. Co., No. 8:09-CV-1556-T-27TGW, 2012 WL 939387, at *14 (M.D. Fla. Jan. 25, 2012) (unpublished Report and Recommendation) (finding that $95, rather than the requested $180, is a reasonable rate for a certified paralegal with eighteen years of experience), adopted, No. 8:09-CV-1556-T-27TGW, 2012 WL 939247 (M.D. Fla. Mar. 20, 2012) (unpublished); Selby v. Christian Nicholas & Assocs, Inc., No. 309-CV-121-J-34JRK, 2010 WL 745748, at *5 (M.D. Fla. Feb. 26, 2010) (unpublished) (citations omitted) (stating that "[c]ourts in the Middle District of Florida have determined $95.00 per hour to be a reasonable figure for paralegal services in this market").

Second, 3.1 of the requested 7.6 hours appear to have been spent on merely clerical tasks and therefore are not compensable. Cook v. Law Offices of Forster & Garbus, No. 6:10-CV-934, 2010 WL 4941439, at *2 (M.D. Fla. Nov. 3, 2010) (unpublished Report and Recommendation) (stating that "[w]ork that is purely clerical in nature, such as preparing notices of cancellation of depositions, contacting court reporters, mailing, filing, or otherwise delivering documents, and the like, are not compensable hours"), adopted, No. 6:10-CV-934, 2010 WL 4941659 (M.D. Fla. Nov. 29, 2010) (unpublished). Specifically, a number of Mr. Davis's tasks listed on the Time Sheet primarily involved mailing, filing, downloading, or saving documents (.3 hours on December 31, 2014; .1 hours on February 10, 2015; .1 hours on February 24, 2015; .1 hours on March 11, 2015; .1 hours on March 19, 2015; .1 hours on March 23, 2015; .2 hours on March 25, 2015; .3 hours on June 1, 2015; .3 hours on August 4, 2015; .3 hours on November 3, 2015; and .1 hours on November 4, 2015). Time Sheet

at 2-6. Other tasks involved logging client or opposing counsel communications for attorneys (.1 hours on February 17, 2015 and .5 hours on November 24, 2015) or calendaring deadlines (.2 hours on March 23, 2015 and .3 on January 29, 2016). Id. at 1, 4, 5.

Due to the excessive hourly rate and the clerical nature of much of the billed tasks, the $1,026 in fees billed for Mr. Davis's paralegal services (7.6 hours at $135 per hour) should properly be reduced to $427.50 (4.5 hours at $95 per hour), meaning that the total attorneys' fees amount should be reduced by $598.50. The undersigned notes, however, that by requesting only $3,250 in attorneys' fees, Plaintiff already has subtracted $699 from the total calculated attorneys' fees amount of $3,949. See Suppl. Decl. at 4. Mr. Weisberg represents that the requested amount of $3,250 is based on an "exercis[e] of billing discretion, where some time entries may be clerical or otherwise excessive." Id. The undersigned finds that the requested amount effectively accounts for the excessive fees for Mr. Davis's paralegal services.[9]

Based on the foregoing, the undersigned finds that most of Plaintiff's requested award of $3,250 for attorneys' fees is reasonable and due to be granted.

**E. Costs**

Finally, Plaintiff seeks court costs of $420, pursuant to 15 U.S.C. § 1692k(a)(3). Motion at 2. The FDCPA entitles a prevailing plaintiff to "the costs of the action." 15 U.S.C. § 1692k(a)(3). Rule 54(d), moreover, creates a "strong presumption that the prevailing party

---

[9] In the February 10, 2016 Report and Recommendation (Doc. No. 12), the undersigned overlooked that the requested attorneys' fees amount was reduced specifically to account for clerical or otherwise excessive fees. Accordingly, the undersigned subtracted $598.50 (for Mr. Davis's excessive fees) from the requested fee amount of $3,250. Report and Recommendation at 14. This Amended Report and Recommendation corrects that error.

will be awarded costs." Mathews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. 2007) (citing Arcadian Fertilizer, L.P. v. MPW Indus. Serv., Inc., 249 F.3d 1293, 1296 (11th Cir. 2001)). "[P]rivate process server fees may be taxed pursuant to §§ 1920(1) and 1921." U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 624 (11th Cir. 2000). Such costs are properly taxed so long as those costs "do not exceed the cost of having the U.S. Marshal's Service effectuate service." James v. Wash Depot Holdings, Inc., 242 F.R.D. 645, 648 (S.D. Fla. 2007) (citing W&O, Inc., 213 F.3d at 623-24).

Mr. Weisberg asserts that the requested $420 "comprises $400 for this Court's filing fee, and $20 for service by a private process server." Suppl. Decl. at 4. The undersigned finds that these costs are appropriate and should be awarded.

### V. Conclusion

Upon review of the Motion and the file, and for the foregoing reasons, the undersigned finds that Plaintiff has met the requirements for entry of a default judgment against Defendants. Accordingly, it is

**RECOMMENDED THAT**:

1. Plaintiff's Motion for Default Judgment Against Defendant Blueshore Recovery Systems, LLC (Doc. No. 8) be **GRANTED in part and DENIED in part**.

2. The Motion be **GRANTED to the extent** that the Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant in the amount of $2,500 in statutory damages, $3,250 in attorneys' fees, and $420 in costs.

3. The Motion otherwise be **DENIED**.

4. The Clerk of Court be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on February 25, 2016.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

-17-